**NOWERY v. SMITH et al.**

Civil Action No. 5087.

District Court, E. D. Pennsylvania.

Dec. 23, 1946.

Samuel Mandel and Freedman, Landy & Lorry, all of Philadelphia, Pa., for plaintiff.

H. G. Kildare and Rawle & Henderson, all of Philadelphia, Pa., for defendants.

BARD, District Judge.

This case arises on defendants' motions for judgment n. o. v. and for a new trial.

The plaintiff, James N. Nowery, a former seaman, brought suit for personal injuries under the Jones Act,[1] and for maintenance and cure, against defendants, who were the operators of the merchant vessel "Matthew B. Brady." The injuries of which plaintiff complained were sustained by him in a fist fight with the chief engineer of the "Brady," one Nantau, while plaintiff was on shore leave, in a barroom at Antilla, Cuba.

By agreement of counsel, the issue of maintenance and cure was resolved by the Court, leaving only the question of defendants' liability for damages for the injuries to be determined by the jury. The Court charged the jury, in substance, that they could find for plaintiff if they found (a) that Nantau, when he entered the barroom where the fight occurred, was acting as an officer of the ship, and was on the ship's business; or, (b) if they found that Nantau was a man of vicious and brutal tendencies, who was likely to engage in violent and unprovoked physical assaults upon his fellows, and that Nantau's disposition was known, or should have been known, to the master of the vessel; provided, in either instance, that the jury also found that plaintiff was free from wilful misbehavior, and that he did not provoke the assault.

The jury returned a verdict of $2500 in favor of plaintiff, and the Court found for plaintiff in the amount of $129.50 on the issue of maintenance and cure. Defendants then filed the motions now under consideration.

Defendants urge that plaintiff cannot recover either damages under the Jones Act, or maintenance and cure, because his injuries were sustained while he was in a barroom on shore leave. The benefits of the Jones Act are extended to "Any seaman who shall suffer personal injury in the course of his employment * * *." Plaintiff contends that the Supreme Court has decided that a seaman, even though ashore, is "in the course of his employment," citing O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596, and Aguilar v. Standard Oil Co. of New Jersey, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107.[2] However, I think that plaintiff's interpretation of these two decisions is perhaps stated too abstractly and categorically.

In the O'Donnell case, a seaman, pursuant to orders, was standing on the dock alongside his ship, repairing a conduit through which a cargo of sand was being discharged from the vessel; and, while so engaged, he was injured through the negligence of a fellow employee. In holding that the plaintiff could recover under the Jones Act, the Supreme Court said, at page 42 of 318 U.S., at page 492 of 63 S.Ct.: "The right of recovery in the Jones Act is given to the seaman as such, and, as in the case of maintenance and cure, the admiralty jurisdiction over the suit depends not on the place where the injury is inflicted but on the nature of the service and its relationship to the operation of the vessel plying in navigable waters."

In the instant case, what was the nature of plaintiff's "service," and what was its "relationship to the operation of the vessel plying in navigable waters"? I suggest that an approach to the solution of that problem is found in Aguilar v. Standard Oil Co. of New Jersey, supra. In that case, the plaintiff was injured while crossing premises which he had to traverse on his way back to the vessel from shore leave, and the question presented was whether the shipowner was liable for maintenance and cure under those circumstances. The Supreme Court, in holding the shipowner liable, pointed out that shore leave, with its attendant relaxation, is a necessary and beneficial antidote for the confinement and rigid discipline to which the seaman is

---

[1] Section 33, Merchant Marine Act of 1920, 41 Stat. 1007, 46 U.S.C.A. § 688.

[2] Decided together with Waterman Steamship Corp. v. Jones, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107.

subjected aboard ship, by reason of the unique nature of his employment; and that it is the shipowner's business, and to his interest, to insure that the seaman shall enjoy these hours of relaxation whenever the opportunity presents itself.

I recognize that in the Aguilar case, and the companion case, Waterman Steamship Corp. v. Jones, the Supreme Court expressly limited its decision to the facts before it. However, in both of these cases, it seems to me that it was the occasion for the seaman's absence from the vessel — shore leave — which determined that he was on "the shipowner's business" while he was on premises which had to be traversed in going from or returning to the vessel. That being so, I think that logic compels the conclusion that the seaman should also be considered on "the shipowner's business" while he is actually enjoying his shore leave.[3] And if, for the purpose of determining the shipowner's liability for maintenance and cure, the seaman is said to be on "the shipowner's business" while on shore leave, I can see no valid reason why, for the purpose of determining the shipowner's liability under the Jones Act, the seaman should not be said to be "in the course of his employment" at the same time. It is simply a question of defining the seaman's status; and I think that the concepts "on the shipowner's business," and "in the course of employment," as they are applied to the seafaring trade, comprehend identical factual situations.

■ Of course, I am not suggesting that any given set of circumstances which would give rise to liability for maintenance and cure would automatically result in liability under the Jones Act, because liability under the Jones Act is predicated upon negligence, whereas the liability for maintenance and cure is an incident of the seaman's contract of employment. I have determined only that the plaintiff in the instant case was on "the shipowner's business," and "in the course of his employment," at the time when the fight occurred which resulted in his injuries.

■ Resolving all disputed issues of fact in plaintiff's favor, as I must for the purpose of deciding the motions now under consideration, the material facts surrounding the occurrence of the fight in which plaintiff was injured were these: Nowery, the plaintiff, and Evans, a shipmate, were on shore leave, drinking beer at a barroom in Antilla, Cuba. While they were so engaged, Nantau, the chief engineer, entered the barroom, accompanied by several fellow officers from the "Brady". At Evans' suggestion, Nowery and Evans got up and left, and after walking around for a short time, they entered another barroom on a side street, where they sat down at a table and ordered a beer. Before they had finished one beer, Nantau came into the barroom and walked over to Evans, and said, "What are you laughing at?" Evans replied, "I am not laughing about anything. I don't want any trouble with anybody," and got up and walked away from the table. Nowery then arose, and said to Nantau, "Look, chief, we are not looking for any trouble. Why don't you go on about your business? We are not bothering anybody." Thereupon Hall, a naval gunner who had appeared in the meantime, "sort of made a grab" for Nowery, but Nantau shoved Hall aside, saying, "I will take care of this myself." Nantau then struck Nowery in the face, sending him sliding across the floor, and an exchange of blows ensued, during the course of which Nowery's nose was injured. Nowery and Evans stated that they had left the first barroom because they thought that Nantau and his party were "looking for trouble", and there was testimony that Nantau had had a few drinks before he accosted Evans. Nantau testified that his purpose in speaking to Evans was simply to let Evans know that he (Nantau) had seen him drinking ashore, because he had very recently suspected Evans of feigning illness aboard ship in order to avoid work. Evans was employed in the engineering department aboard ship and was, therefore, subject to Nantau's supervision and control. Nowery, on the other hand,

---

[3] The Court so held in Moss v. Alaska Packers Association. 70 Cal.App.2d Supp. 857, 160 P.2d 224, 1945 A.M.C. 493. See also Kyriakos v. Goulandris, 2 Cir., 1945, 151 F.2d 132, 138, wherein the Court discussed both the O'Donnell case and the Aguilar case.

was a deck maintenance man, and took his orders from the chief mate, not from Nantau. Nowery had had very few contacts with Nantau aboard ship, except to pass the time of day.

Where the injuries complained of were the result of an assault, the Supreme Court has held the employer liable, under the Jones Act, when the assault was committed in the course of the discharge of the assailant's duties, and in furtherance of the work of the employer's business, even though the assault was in excess of the authority conferred by the employer upon the assailant. Jamison v. Encarnacion, 281 U. S. 635, 50 S.Ct. 440, 74 L.Ed. 1082. The Court said that under those circumstances, the assault was negligence on the part of the assailant, within the meaning of the Act. In Alpha Steamship Corporation v. Cain, 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086, the Supreme Court allowed recovery under the Jones Act for an assault committed upon a seaman by his superior, who was authorized to direct the seaman about his work, and who, for the purpose of reprimanding the seaman for tardiness, struck him with a wrench and seriously injured him.

In Lykes Bros. S. S. Co. v. Grubaugh, 5 Cir., 1942, 128 F.2d 387, the rule of Jamison v. Encarnacion, supra, and Alpha Steamship Corporation v. Cain, supra, was stated thus (at 128 F.2d 391): "That the employer may be liable under the Jones Act only when the assault is committed by one having authority over the person assaulted and then only when it is committed in the course of the conduct of the master's business." The Court further noted, at 128 F.2d 391: "No case has held a steamship company liable for an assault committed * * * by the head of one department upon the head or an employee of another department over whom the assailant has no authority of direction or control. None has held the master liable where * * * the assault occurred as the result of anger over matters having nothing to do with the exercise, over the assailed, of authority delegated by the master to the assailant in the discharge of duties with which the master had charged him." See also Nelson v. American-West African

Line, Inc., 2 Cir., 1936, 86 F.2d 730, certiorari denied 300 U.S. 665, 57 S.Ct. 509, 81 L.Ed. 873; Brailas v. Shepard S. S. Co., 2 Cir., 1945, 152 F.2d 849; Yukes v. Globe S. S. Corporation, 6 Cir., 1939, 107 F.2d 888.

█ In the light of these decisions, I think that, in the instant case, there was no basis, in law, for a finding that defendants are liable to Nowery on the theory that Nantau, when he entered the barroom where the fight occurred, was acting "as an officer of the ship." As I have stated, that was one of the two theories on which the jury were instructed that they could find for the plaintiff. Nantau was not Nowery's superior officer; and there is nothing to connect the assault with any exercise of authority over Nowery, or with any discharge of a duty which defendants, through the master, had entrusted to Nantau. It may be argued that Nantau had "business" with Evans in coming into the barroom. But he had no business whatever with Nowery; and whatever "business" Nantau may have had with Evans had been transacted before the fight started. Nantau had had his say, and Evans had gotten up and walked away, before Nowery interjected his remarks.

█ I am convinced, however, that the second theory of liability which was submitted to the jury stated the law correctly, and that there was evidence to support a recovery based upon it. The Court instructed the jury that they could find for the plaintiff if Nantau was a person of cruel, brutal and inhuman nature, one known to give vent to a wicked disposition by violent and uncalled for assaults upon others, and that his disposition was known, or should have been known, to the master of the vessel. It has been held, under the Jones Act, that the tolerance of such an individual among the crew constitutes negligence on the part of the vessel's operators. Kyriakos v. Goulandris, 2 Cir., 1945, 151 F.2d 132; Koehler v. Presque-Isle Transp. Co., 2 Cir., 1944, 141 F.2d 490. This same basis of liability has been called "unseaworthiness" under the general maritime law. The Rolph, 9 Cir., 1924, 299 F. 52.

█ Without going into the evidence in too great detail, I will say that, in the

instant case, there was evidence that Nantau had been the perpetrator of at least one brutal assault upon a member of the crew prior to the assault upon Nowery. There was also evidence that he was of a belligerent nature. In short, there was sufficient evidence to support a finding that Nantau's disposition fitted the description which would impose liability upon defendants, and that the master knew, or should have known, of Nantau's tendencies. Defendants did not call the master as a witness, to deny that he had any knowledge of Nantau's disposition; and the Court charged the jury that defendants' failure to call the master would support an inference that, if he had been called, his testimony would have been unfavorable to defendants. Defendants contend that the Court should have also charged the jury that plaintiff's failure to call additional witnesses who had knowledge of the prior assault upon a crew member would support an inference that their testimony would have been unfavorable to plaintiff. However, I am not aware that such an inference can arise from failure to call a witness simply to corroborate what has already been testified to by other witnesses for the plaintiff. Defendants also point out that plaintiff did not prove that any official complaint concerning Nantau's behavior was made to the master of the vessel until after the assault on Nowery. I can see little merit in that argument, because it completely overlooks the fact that the master might well have acquired knowledge of an undesirable situation other than by having someone call his attention to it.

■ Defendants also contend that plaintiff cannot recover either damages or maintenance and cure because the evidence clearly showed that he had provoked the assault which resulted in his injuries. I cannot say that, in law, the words which Nowery used in addressing Nantau constituted provocation for a physical attack. Under the charge of the Court, the jury could not have found in plaintiff's favor on the question of damages unless they also found that he did not provoke the assault, and on the issue of maintenance and cure, the Court also found as a fact that Nowery did not provoke the attack.

■ Finally, defendants contend that plaintiff cannot recover either damages or maintenance and cure because the injuries were sustained by reason of his own wilful misbehavior—namely, intoxication. Here again, the triers of fact found the facts to be otherwise, and I can see no legal error in their findings. Cf. Barlow v. Pan Atlantic S. S. Corporation, 2 Cir., 1939, 101 F.2d 697; The S. S. Berwindglen, 1 Cir., 1937, 88 F.2d 125; Lortie v. American-Hawaiian S.S. Co., 9 Cir., 1935, 78 F.2d 819.

I think that the foregoing discussion, while it has been directed primarily to the question of defendants' liability for damages under the Jones Act, will also dispose of any pertinent objections to plaintiff's recovery on the cause of action for maintenance and cure. I have decided that, when Nowery sustained his injuries, he was on defendants' business. Therefore, his right to maintenance and cure could be defeated only if he had been guilty of wilful misconduct, or had provoked the assault upon himself. The Court, sitting as a jury, found that Nowery had not so disqualified himself, and there was ample evidence to support that conclusion. As to the cause of action for maintenance and cure, defendants' motions for judgment n. o. v. and for a new trial are denied.

■ As to the cause of action for damages under the Jones Act, inasmuch as the jury were instructed that they could find for plaintiff on either one of two theories, one of which would not support a recovery under the facts of the case, although the other would, defendants' motion for a new trial is granted, and defendants' motion for judgment n. o. v. is denied.