## SMITH v. UNITED STATES et al.

## THE ROBERT JORDAN.

### No. 5688.

Circuit Court of Appeals, Fourth Circuit.

April 1, 1948.

Abraham E. Freedman, of Philadelphia, Pa., and R. Arthur Jett, of Norfolk, Va., for appellant.

Leon T. Seawell, of Norfolk, Va. (L. T. Seawell, Jr., of Norfolk, Va., on the brief), for appellees.

Before PARKER and DOBIE, Circuit Judges, and BARKSDALE, District Judge.

PARKER, Circuit Judge.

This is an appeal in admiralty from a decree disallowing a claim of a seaman for maintenance, cure and wages. Libellant entered the service of the Steamship "Robert Jordan" on February 8, 1944. On February 16th he signed the statutory shipping articles for a foreign voyage and thereafter worked and slept aboard the vessel until he was granted shore leave on February 19th. After going ashore, he first went to his home, where to took a bath and obtained some of his belongings which he desired to take with him on the voyage, and then spent the night with a friend. On the following morning, as he was preparing to return to the vessel, he broke his ankle as a result of turning it while walking on some uneven ground in the driveway of the friend's cottage. There is no suggestion that his injury was due to any fault or misconduct on his part or that he violated in any way the terms of the shore leave granted him.

Relief was denied on the ground that libellant's visit to his friend bore no relation to his declared purpose in obtaining the shore leave, which was to go home to get certain belongings and take a bath, and was not incident to a trip for that purpose. In this we think there was error. While shore leave was granted libellant on his request that he might go home for the purpose stated, there was no effort to limit his movements while ashore and no reason why his right to maintenance and cure and wages should not be enforced even though his injuries were received while on shore

leave. Argument is made that relief should be denied because libellant was not actually on a foreign voyage but in the home port of the vessel, was not engaged in the ship's business, and, although on shore leave, was not within the immediate vicinity of the ship at the time of his injury. None of these matters, in our opinion, is ground for denying relief.

The liability of the ship for maintenance, cure and wages of sick or disabled seamen is well established in the admiralty law. It is based upon entirely different doctrines from those relating to the liability of the master at common law or the employer under workmen's compensation statutes. Its basis was carefully explained more than a century ago by Mr. Justice Story in Harden v. Gordon, Fed.Cas.No. 6,047, and Reed v. Canfield, Fed.Cas.No. 11,641. Some of the lower federal courts imported into the application of the admiralty doctrine principles borrowed from common law or workmen's compensation cases,[*] but the Supreme Court repudiated these holdings in the recent case of Aguilar v. Standard Oil Co., 318 U.S. 724, 733, 63 S.Ct. 930, 87 L.Ed. 1107, which reaffirmed the ancient doctrine of the admiralty law and held that the liability for maintenance and cure on account of sickness or injury incurred in the service of the vessel, and not due to misconduct, extended to injuries received by the seamen while on shore leave.

It is true that in the Aguilar case and its companion case, Waterman Steamship Corp. v. Jones, 318 U.S. 724, 63 S.Ct. 930, 936, 87 L.Ed. 1107, the Supreme Court expressly limited its decision to the two cases before it, which involved seamen injured during shore leave on premises in the immediate vicinity of the vessel while going from or returning to it. The question presented to the court, however, was a much broader one, viz., whether a seaman on shore leave should be held within the service of the ship and hence within the protection of the maintenance and cure doctrine whether or not he was actually engaged at the time in the ship's business, or whether it was necessary that he actually be so engaged to come within the protection of the doctrine. The court, in answering the question, pointed out that shore leave was covered by the doctrine even though the seaman was not ashore on the ship's business, and although the decision was expressly limited to the fact situations before the court, no logical basis was suggested for distinguishing between an injury occurring in the vicinity of the vessel and one occurring elsewhere. After referring to the necessity of shore leave for seamen and the dangers of injury or disease incident to their going ashore, the Supreme Court went on to say:

"It was from considerations of exactly this character that the liability for maintenance and cure arose. From them likewise, its legal incidents were derived. The shipowner owes the protection regardless of whether he is at fault; the seaman's fault, unless gross, cannot defeat it; unlike the statutory liability of employers on land it is not limited to strictly occupational hazards or to injuries which have an immediate causal connection with an act of labor. An obligation which thus originated and was shaped in response to the needs of seamen for protection from the hazards and peculiarities of marine employment should not be narrowed to exclude from its scope characteristic and essential elements of that work. And, indeed, no decision has been found which so narrows the shipowner's parallel obligation in the case of sickness or disease. Rather the implications of existing authority point the other way. Cf. The Bouker No. 2, supra. The considerations, including those of public interest adverted to by Mr. Justice Story, which support the liability for illness, or for injuries received aboard ship, likewise sustain it for injuries incurred on shore leave, as were those now in issue. To exclude such injuries from the scope of the liability would ignore its origins and purposes."

While the dangers of going ashore in foreign ports is given as one of the reasons for the liability for injuries and disease occurring during shore leave, the real basis

---

[*] Smith v. American South African Lines, D. C., 37 F.Supp. 262; Wohlgren v. Standard Oil Co., D. C., 42 F. Supp. 992; Collins v. Dollar Steamship Lines, D. C., 23 F.Supp. 395.

of the liability is that the seaman while on shore leave is still in the ship's service and subject to the orders and control of the master. Liability for injuries or disease occurring during shore leave is not limited, therefore, to shore leave in foreign ports. This was expressly decided by Mr. Justice Story in Reed v. Canfield, supra, where he said:

"The title to be cured at the expense of the ship is co-extensive with the service in the ship. The seaman is to be cured for injuries and sickness occurring while he is in the ship's service. It is the benefit from the service, which constitutes the groundwork of the claim. And I am wholly unable to perceive any principle, upon which a distinction can be maintained between a service in a foreign and a home port.

"It has been suggested, that a seaman at home cannot be entitled to any claim against the owners of the ship for injuries received in the ship's service, any more than a mechanic or manufacturer at home for like injuries in the service of his employer. If the maritime law were the same in all respects with the common law, and if the rights and duties of seamen were measured in the same manner, as those of mechanics and manufacturers at home, doubtless the cases would furnish a strong analogy. But the truth is, that the maritime law furnishes entirely different doctrines upon this, as well as many other subjects, from the common law. Seamen are in some sort coadventurers upon the voyage; and lose their wages upon casualties, which do not affect artisans at home. They share the fate of the ship in cases of shipwreck and capture. They are liable to different rules of discipline and sufferings from landsmen. The policy of the maritime law, for great, and wise, and benevolent purposes, has built up peculiar rights, privileges, duties, and liabilities in the sea service, which do not belong to home pursuits."

It is argued that to permit recovery in a case of this sort is to make the ship an insurer; but it is worthy of note that Prof. Robinson refers to maintenance and cure as a "job insurance". Robinson on Admiralty p. 291. And it is significant that the Shipowners' Liability Convention of 1936, 54 Stat. pp. 1693, 1695 provides that the liability shall exist for "sickness and injury occurring between the date specified in the articles of agreement for reporting for duty and the termination of the engagement," language which manifestly covers shore leave as well as ship duty and does not limit liability to injury incurred in the ship's service. It is provided in the Convention that national laws or regulations may make exceptions in respect of "injury incurred otherwise than in the service of the ship." No law or regulation of this country makes any such exception; and as we have seen the decision of the Supreme Court in the Aguilar case expressly negatives such exception. In a note appearing on page 732 of 318 U.S., page 935 of 63 S.Ct., 87 L.Ed. 1107, of the Supreme Court's opinion in that case, the court uses the following significant language:

"The recent tendency to confine the scope of the obligation to those shipboard injuries which are caused by the requirements of the seaman's duties [Meyer v. Dollar S. S. Lines, 9 Cir., 49 F.2d 1002; cf. Brock v. Standard Oil Co., D.C., 33 F.Supp. 353;] is consonant neither with the liberality which courts of admiralty traditionally have displayed toward seamen who are their wards nor with the dictates of sound maritime policy. Calmar S. S. Co. v. Taylor, supra, 303 U.S. [525] at page 529," 58 S.Ct. [651], 653, 82 L.Ed. 993.

Recent decisions in the Second and Third Circuits, following the decision of the Aguilar case, uphold the right of recovery for injuries sustained on shore leave without regard to whether they were sustained in the vicinity of the vessel while leaving or returning to it. Dasher v. United States, D.C., 59 F.Supp. 742; Kyriakos v. Goulandris, 2 Cir., 151 F.2d 132, 138; Nowery v. Smith, D.C., 69 F.Supp. 755, affirmed, 3 Cir., 161 F.2d 732. In the Kyriakos case, libellant was assaulted and seriously injured while on shore leave. Judge Augustus Hand said:

"The Supreme Court has said, Aguilar v. Standard Oil Company, 318 U.S. 724, 737, 63 S.Ct. 930, 937, 87 L.Ed. 1107, that the liability of a shipowner for maintenance and cure extends to 'injuries incurred on the dock or other premises which must be traversed in going from the vessel to the pub-

lic streets or returning to it from them,' but added: 'How far it extends beyond that point we need not now determine.' But the reasoning and intimations of the opinion indicate a liability for maintenance and cure in the case of injuries received while the seaman is on shore leave, that are not due to any misconduct on his part."

In Nowery v. Smith, supra, the Circuit Court of Appeals of the Third Circuit expressly approved the reasoning of Judge Bard in the District Court, where, in holding that there was liability for maintenance and cure, he said [69 F.Supp. 757]:

"I recognize that in the Aguilar case, and the companion case, Waterman Steamship Corp. v. Jones, the Supreme Court expressly limited its decision to the facts before it. However, in both of these cases, it seems to me that it was the occasion for the seaman's absence from the vessel— shore leave—which determined that he was on 'the shipowner's business' * * * while he is actually enjoying his shore leave."

For the reasons stated the decision appealed from will be reversed and the cause will be remanded for further proceedings not inconsistent herewith.

Reversed.