Alden HASKELL, Jr., Plaintiff, Appellant,

v.

SOCONY MOBIL OIL COMPANY, Inc., Defendant, Appellee.

No. 5114.

United States Court of Appeals
First Circuit.

Oct. 31, 1956.

Nathan Greenberg, Boston, Mass., for appellant.

John T. Riley, Boston, Mass., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment for the defendant in a suit under the general admiralty law for maintenance and cure from which the claim for cure was dropped at the trial. The facts upon which the plaintiff-appellant bases his claim for relief are not in dispute.

The plaintiff-appellant had worked as an able bodied seaman on the defendant-appellee's vessel Mobilight for about four and one half years before he was injured. During that time he had accumulated 46 days' vacation under the terms of his employer's collective bargaining agreement with the labor organization which represented the plaintiff-appellant and the employees in his unit. On December 4, 1952, as the Mobilight approached Providence, Rhode Island, the plaintiff asked for 10 days' leave of absence. His request was granted and as soon as the vessel docked he went to his home in a nearby town. On December 5 he wrote to a representative of the defendant-appellee that "The death of my father forces me to ask for my full vacation to settle up personal problems instead of the 10 day leave of absence that I asked for upon leaving the Mobilight." His request was granted on December 8 by letter from the manager of the defendant-appellee's Marine Operating Division in which it was stated: "Your vacation which amounts to 46 days, starts on December 5th, 1952 and is given in accordance with the collective bargaining agreement with the Socony-Vacuum Tanker Men's Association." On the next day, December 9, 1952, while driving his brother's automobile on a purely personal errand having nothing to do with his employment, he ran off the road into a tree and was injured. This suit is to

recover maintenance during the period of his incapacity following that accident.[1]

The District Court, distinguishing sharply between the kind of shore leave traditional in maritime employment and vacations under collective bargaining agreements of the kind now generally common in all employments, ruled that the plaintiff was not entitled to maintenance. We agree.

The seaman's ancient right to maintenance and cure, cure in the sense of care until medical science can do no more, Calmar S. S. Corp. v. Taylor, 1938, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993; Farrell v. United States, 1949, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850, stems from the peculiar nature and hazards of the seaman's work. Originally the right was primarily to protect seamen from being abandoned sick or injured in a distant port. Thus the right arises not only when the seaman is injured while actually at work on his vessel, but also when his injury occurs during off duty periods. And it arises when he is taken ill from whatever cause during a voyage. The right is denied only when the seaman's illness or injury is the result of his own gross misconduct or deliberate indiscretion or disobedience of orders. See Farrell v. United States, supra, 336 U.S. at page 516, 69 S.Ct. at page 709; The Osceola, 1903, 189 U.S. 158, 170, 23 S.Ct. 483, 47 L.Ed. 760; Aguilar v. Standard Oil Co., 1943, 318 U.S. 724, 731, 63 S.Ct. 930, 87 L.Ed. 1107, and cases cited.

Counsel agree, however, that for the right to arise it is essential that the seaman's injury or illness occur "in the service of the ship." This rather loose phrase has been liberally but never precisely defined. It has been construed to embrace within its meaning more than service on board ship or even presence on shipboard. In the Aguilar case, supra, it was held that seamen departing on or returning from authorized shore leave who were injured while traversing the only available route between their ships and the public streets were entitled to maintenance and cure, even though at the time they were pleasure bent and not on their vessels' business. The reason the Court gave for this holding can perhaps best be summed up by quoting from 318 U.S. at pages 733 and 734, 63 S.Ct. at page 935, of the opinion wherein it said:

"* * * Men cannot live for long cooped up aboard a ship, without substantial impairment of their efficiency, if not also serious danger to discipline. Relaxation beyond the confines of the ship is necessary if the work is to go on, more so that it may move smoothly. No master would take a crew to sea if he could not grant shore leave, and no crew would be taken if it could never obtain it. Even more for the seaman than for the landsman, therefore, 'the superfluous is the necessary * * * to make life livable,'[2] and to get work done. In short, shore leave is an elemental necessity in the sailing of ships, a part of the business as old as the art, not merely a personal diversion."

In the Farrell case cited above the Court followed its holding in the Aguilar case even though in Farrell the seaman was injured on his way back to his ship after overstaying his shore leave. And in Warren v. United States, 1951, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503, the Court went a step further by holding a shipowner under the duty to provide maintenance and cure for a seaman who while on shore leave fell out of a dance hall window and broke his leg.

But these are all shore leave cases, that is, cases in which the seaman was injured while ashore in the course of a voyage for only a brief period, and so also is German v. Carnegie-Illinois Steel Corp.,

---

1. The amount of maintenance to which the plaintiff is entitled, if he is entitled to recover at all, was stipulated by counsel at the trial.

2. The quotation is from Mr. Justice Holmes' dissenting opinion in Tyson & Brother United Theatre Ticket Offices v. Banton, 1927, 273 U.S. 418, 447, 47 S.Ct. 426, 71 L.Ed. 718.

3 Cir., 1948, 169 F.2d 715, upon which the appellant heavily relies, as the court in that case was careful to point out. In none of them did the court hold or indicate by dictum that a shipowner was under the duty to provide maintenance and cure to a seaman injured while at home on a vacation given in accordance with the terms of a collective bargaining agreement. Nor have we found any case so holding or indicating, or, for that matter, any case holding or indicating the contrary. The case at bar seems to be one of first impression.

■ The rationale of the cases cited does not seem to us to support the appellant's case. Shore leave consisting of brief periods ashore in home or foreign ports in the course of a voyage, or perhaps even before a voyage begins or after it has terminated, is, no doubt, a usual, traditional, and perhaps essential incident of a seaman's employment. Furthermore during such leave the seaman in a sense is in the service of his ship, for we suppose he could be called back on board, if he could be found, to cope with any shipboard emergency which might arise in port. But protracted vacations are not of "elemental necessity in the sailing of ships, a part of the business as old as the art." They are not traditional in maritime employment; they are the product of modern collective bargaining agreements now generally common in all employments both at sea and ashore. And during vacation periods we cannot assume that the seaman is answerable to the call of duty, and hence in a sense is "in the service of the ship."

■ It is irrelevant that the plaintiff while on vacation in 1951 when asked "if he would be willing to work" acceded to the defendant's request and interrupted his vacation to assist in pumping out another vessel, as the plaintiff offered to prove at the trial. Proof of willingness to serve does not show an obligation to do so. If anything it indicates the contrary. The plaintiff's offer of proof was correctly rejected for the reason that it fell short of indicating that the plaintiff during vacation periods was under any

duty to respond to the defendant's request for help, and for that reason might perhaps be said to be "in the service of the ship."

■ In short, we are of the view that there is no reason based on the peculiarities of maritime employment for imposing the duty to provide maintenance and cure on a shipowner under the circumstances disclosed in the case at bar, and that to impose the duty would go beyond the rationale of the decided cases.

The judgment of the District Court is affirmed.