FRANK M. PALMER vs. BOAT EDITH L. BOUDREAU, INC.

Essex.   February 8, 1967. — March 3, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Seaman.   Admiralty.*

Where a seaman having a steady job as a member of the crew of a fishing
  vessel and subject to call to perform work on the vessel while ashore
  between trips was injured by slipping in his own home, findings were
  warranted that he was "in the service of the vessel" when injured and
  that he was entitled to recover maintenance and cure for his injury from
  the owner of the vessel.

CONTRACT.   Writ in the District Court of Eastern Essex
dated October 26, 1964.

There was a finding for the plaintiff by *Durkin, J.*   The
defendant appealed from an order by the Appellate Divi-
sion dismissing a report.

*Solomon Sandler* for the defendant.
*Michael B. Latti* for the plaintiff.

CUTTER, J.   Palmer, a commercial fisherman who usu-
ally was employed as a cook or deckhand, was hired by the
captain of the defendant's fishing vessel on July 1, 1964.
Palmer was to have a steady job ("site") aboard until he
quit, or was discharged for cause.   If "nothing was said or
done by either party prior to or at the time of settling up,"
Palmer would make the next trip.

Palmer made two trips.   The second ended on Saturday,
July 18, 1964.   "The catch was not unloaded but was
topped with ice to wait for Monday's market."   On Mon-
day, Palmer and others tended the hatch and helped clean
the vessel.   About 11 A.M. Palmer went home, had lunch,
"and took a shower around noon."   While doing so, he
slipped and hurt his wrist.   About 2 P.M. he returned to the
Fish Pier "to settle up.   He was paid for his trip and re-
turned home."   Nothing had been done prior to July 21,
1964, "to terminate . . . [Palmer's] site aboard the . . .
vessel."

Palmer's wrist got worse. On July 21, Palmer "notified the captain . . . that he had been injured and . . . would be unable to make the next trip." A transient fisherman (employed on a trip-to-trip basis) took Palmer's place. Palmer was disabled until September 18, 1964.

In July, 1964, "it was the . . . practice . . . on the fishing boats going out of Gloucester, that the members of the crew could be called upon by the [c]aptain, while ashore between trips, to perform certain work aboard the fishing vessel, such as, mending of twine . . . repairing nets . . . ordering grub . . . or cleaning the galley. The injury occurred while . . . [Palmer was] subject to the call of duty since he could be called upon at any time to perform [such] work aboard the vessel, . . . as well as any other duties that might arise."

In this action brought by Palmer in a District Court to recover under general admiralty and maritime law for his maintenance, care, and cure arising out of his injuries, the trial judge granted various rulings requested by Palmer and denied certain requests of the defendant. These requests in general raised the issue whether in the circumstances Palmer as matter of law could recover maintenance, care, and cure for his injuries suffered within the confines of his own home. The trial judge found as a fact that Palmer "was a member of the crew . . . and in the service of the vessel, subject to being called back to duty . . . when he received his injury."

The Appellate Division dismissed a report. The defendant appeals.

The broad liability of shipowners "for the maintenance and cure of seamen becoming ill or injured during the period of their service" was fully discussed in *Aguilar* v. *Standard Oil Co. of N. Y.* 318 U. S. 724, 730, where (at pp. 732–738) this liability was treated "as covering injuries received without misconduct while on shore leave." In *Farrell* v. *United States,* 336 U. S. 511, a shipowner was held liable for maintenance and cure of a seaman who overstayed his shore leave and was injured returning late to his ship. Mr. Justice Jackson said (at p. 516), "For any pur-

pose to introduce a graduation of rights and duties based on some relative proximity of the activity at time of injury to the 'employment' or the 'service of the ship,' would alter the basis and be out of harmony with the spirit and function of the doctrine . . . ." See *Warren* v. *United States,* 340 U. S. 523, 524 (injury of negligent seaman at a dance hall on shore leave). See also *Mitchell* v. *Trawler Racer, Inc.* 362 U. S. 539, 544, fn. 6; *Vaughan* v. *Atkinson,* 369 U. S. 527, 531–534. In *Smith* v. *United States,* 167 F. 2d 550, 551 (4th Cir.), liability for maintenance and cure was recognized as extending to a seaman on shore leave in the ship's own home port, although not at the moment of his injury "engaged . . . in the ship's business." See *German* v. *Carnegie-Ill. Steel Corp.* 169 F. 2d 715, 716 (3d Cir.).

The decision most closely relevant is *Hunt* v. *Trawler Brighton, Inc.* 102 F. Supp. 300 (D. Mass.). There a seaman on a fishing vessel, employed upon oral arrangements and having a "steady site," was injured near his lodging house while on shore leave in Boston, the port from which the trawler made trips. Between trips members of the crew (p. 301) ordinarily were free to leave the vessel and go "about their own affairs," although "they could be called upon to perform such work as mending nets." Judge Ford held that the "right to maintenance and cure is not determined by what the seaman is doing when he receives his injury. It is only required that he be in the service of the ship in the sense of being generally answerable to the call of duty." The *Hunt* case was cited with approval in *Keeping* v. *Dawson,* 262 F. 2d 868, 870–871 (1st Cir.). In the *Keeping* case, however, recovery was denied in the absence of evidence that, on the date of his injury, the seaman "was generally answerable to the call of duty by the master" of his vessel.

In the circumstances, rulings could not have been given that Palmer, who was at the time of his injury "generally answerable to the call of duty," (a) was not "in the service of the ship" and (b) was not entitled to maintenance and cure.

*Order dismissing report affirmed.*