Ramon **RODRIGUEZ ALVAREZ**, Appellee,

v.

**BAHAMA CRUISE LINE, INCORPORATED, Bermuda Star Line, Incorporated, and S.S. BERMUDA STAR, her engines, boilers, tackle, appurtenances, etc., Defendants.**

**Appeal of BERMUDA STAR LINE, INCORPORATED, Appellant.**

**No. 753, Docket 89–7881.**

United States Court of Appeals, Second Circuit.

Argued Jan. 29, 1990.

Decided March 9, 1990.

---

Howard W. Burns, Jr., Martocci & Burns, New York City, for appellant.

Paul T. Hofmann, Phillips Cappiello Kalban Hofmann & Katz, P.C., New York City, for appellee.

Before OAKES, Chief Judge, and KEARSE and FLETCHER,* Circuit Judges.

* Of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

OAKES, Chief Judge:

This is an admiralty case in which Bermuda Star Line, Inc. (BSL), appeals an August 2, 1989, judgment of the United States District Court for the Southern District of New York, Robert L. Carter, Judge, holding BSL liable for the maintenance and cure of one of its seamen, Ramon Rodriguez Alvarez, and finding that BSL's callous indifference to Alvarez's health and well-being entitled Alvarez to recover his attorneys' fees and trial expenses from BSL. We affirm the judgment of the district court. Because BSL's appeal is totally without merit, pursuant to Federal Rule of Appellate Procedure 38, we award Alvarez single costs and reasonable attorneys' fees in connection with opposing the appeal. We remand to the district court for calculation of Alvarez's attorneys' fees and costs on appeal.

Alvarez, a Honduran national, suffered an injury to his right knee from an accident while on board BSL's SS Bermuda Star on December 2, 1985. Following the accident, Alvarez reported the pain in his knee to ship officials. After continuing work for approximately seven more months, Alvarez consulted Dr. Enrique Ergas while on shore leave in New York. Dr. Ergas diagnosed Alvarez as suffering from chondromalacia, a chronic knee condition aggravated by the December 2, 1985, accident and Alvarez's general job duties. Dr. Ergas recommended surgery. On July 19, 1986, without notifying his employer, Alvarez left the ship for surgery. Pre-operative testing revealed that Alvarez had a diabetic condition, which required two weeks of treatment prior to surgery. Surgery took place on August 1, 1986.

Alvarez returned to the ship on August 9, 1986, to pick up his pay check and belongings. He delivered a letter from his attorney, dated August 8, 1986, advising BSL of the operation and seeking reimbursement for medical expenses, $45 per day for maintenance in New York City ($30 per day in lodging and $15 per day in food) from July 19, 1986, until August 10, 1986, and $6.50 per day for maintenance in Honduras for an anticipated six weeks of recuperation in Honduras. The letter indicated that future bills would be forwarded as well. BSL disavowed responsibility for any expenses submitted. To justify its refusal to compensate Alvarez for his maintenance while in New York City, BSL asserted that "[w]e know of no court which has awarded a sum that high for maintenance [$45 per day]."

Alvarez brought suit, seeking recovery for negligence in connection with the December 2, 1985, accident and also seeking reimbursement for maintenance and cure in connection with his surgery. The negligence claim was tried before a jury, which found for BSL, ruling that the accident was due to Alvarez's negligence. Per agreement of the parties, the maintenance and cure claims were left to the determination of the district court, which ruled for Alvarez.

The district court awarded Alvarez $5,202.81 for his medical expenses and $1035 for maintenance in New York City between July 19, 1986, and August 10, 1986. Although Alvarez initially had anticipated needing only six weeks to recuperate in Honduras, as it turned out, he did not fully recover until ten months later. The district court thus awarded Alvarez $1,917.50 for maintenance in Honduras from August 10, 1986, until June 1, 1987, the time at which the district court determined that Alvarez had fully recovered. Finally, the district court found that BSL's unreasonable and intransigent approach to Alvarez's claim for maintenance and cure exhibited the sort of callous indifference to Alvarez's health and well-being that warranted awarding him attorneys' fees and litigation expenses incurred in recovering his maintenance and cure, which the district court found amounted to $15,140.

## DISCUSSION

A. *Alvarez's Entitlement to Maintenance and Cure*

A seaman is entitled to look to his ship operator for maintenance and cure following any injury incurred while in the ship operator's employ. The actual cause of the seaman's injury is irrelevant to his right to

maintenance and cure. *See Calmar S.S. Corp. v. Taylor,* 303 U.S. 525, 527–28, 58 S.Ct. 651, 654–55, 82 L.Ed. 993 (1938). This obligation to furnish maintenance and cure continues until the seaman fully recovers. *See Vaughan v. Atkinson,* 369 U.S. 527, 531, 82 S.Ct. 997, 999, 8 L.Ed.2d 88 (1962). Only the seaman's willful misconduct or deliberate misbehavior relieves the ship operator of this duty. *See Aguilar v. Standard Oil Co.,* 318 U.S. 724, 731, 63 S.Ct. 930, 934, 87 L.Ed. 1107 (1943).

■ Although a seaman is obligated to accept free medical services furnished by the ship operator or a public health facility, in the event that those medical services are inadequate, the seaman may select the physician of his choice. The ship operator must then provide compensation, except to the extent that the seaman's physician is more expensive than a qualified physician preferred by the ship operator, or to the extent that the seaman's physician provides unnecessary medical services. The ship operator bears the burden of establishing such overly expensive or excessive treatment. *See Caulfield v. AC & D Marine, Inc.,* 633 F.2d 1129, 1133–35 (5th Cir. Unit A Jan. 1981).

BSL challenges a series of factual findings made by the district court in ruling that Alvarez was entitled to maintenance and cure. Because we consider the district court's findings well supported by the record and therefore not clearly erroneous, *see* Fed.R.Civ.P. 52(a), we reject BSL's contentions.

■ First, BSL claims that Alvarez had no right to maintenance and cure, because his accident resulted from willful misconduct. Although the jury verdict on Alvarez's negligence claim against BSL established that Alvarez was negligent, negligence alone does not deprive a seaman of the right to maintenance and cure. *See Vella v. Ford Motor Co.,* 421 U.S. 1, 4, 95 S.Ct. 1381, 1383, 43 L.Ed.2d 682 (1975); *Aguilar,* 318 U.S. at 730–31, 63 S.Ct. at 933–34. BSL proposes that the jury verdict on the negligence claim, coupled with what it describes as the overall tenor of the trial, leads to the conclusion that Alvarez

engaged in willful misconduct. BSL cites to nothing from the record to support its bald claim other than the assertion that Alvarez's accident resulted from his acting in anticipation of a superior's order that had not yet been given, and we likewise find nothing else ourselves. Such anticipation cannot be considered willful misconduct.

■ Second, BSL insists that it should not have to pay Alvarez's medical expenses because it provided medical services on board. Given BSL's admission that it had no physician on board capable of performing the necessary surgery on Alvarez's knee, this argument, to put it mildly, borders on the preposterous.

Third, BSL claims that the district court erred in finding that Alvarez was not fully cured by February 1987. BSL cites to the testimony of its expert, Dr. Jack Kapland, who examined Alvarez on February 24, 1987, and concluded that Alvarez had fully recovered. At trial, Alvarez offered the testimony of Dr. Ergas, who examined Alvarez on February 20, 1987, and reached the opposite conclusion, namely, that Alvarez had not fully recovered. The district court chose to credit Dr. Ergas's testimony, and, in the absence of any reason from BSL why the district court should not have done so, we will not upset the district court's finding.

Finally, BSL makes scattered assertions that Alvarez at no time was unfit for duty and that the surgical procedures performed upon him were unnecessary. Here, too, it fails to cite concrete evidence from the record to support its contentions.

■ Apart from its challenge to the district court's findings of fact, BSL urges that Alvarez is not entitled to maintenance for the period between July 19, 1986, and August 9, 1986, because BSL paid Alvarez his wages for this period. When a seaman is injured during his employment on a ship, the ship operator is liable not only for the seaman's maintenance and cure, but also for lost wages. *See The Osceola,* 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903); *Peninsular & Oriental Steam*

*Navigation Co. v. Overseas Oil Carriers, Inc.*, 553 F.2d 830, 834 (2d Cir.) ("If a sailor is stricken with injury or illness at sea, not caused by the seaman's own willful misconduct, his employer must assume responsibility for his medical care, food, lodging and wages for a reasonable period." (citation omitted)), *cert. denied*, 434 U.S. 859, 98 S.Ct. 183, 54 L.Ed.2d 131 (1977).[1] The rationale for the rule that lost wages do not substitute for maintenance is that maintenance compensates the injured seaman for food and lodging, which the seaman otherwise receives free while on the ship. *See McWilliams v. Texaco, Inc.*, 781 F.2d 514, 517 (5th Cir.1986) (citing *Calmar S.S. Corp.*, 303 U.S. at 528, 58 S.Ct. at 655). Because free food and lodging is a component of the seaman's compensation apart from his wages, *see Morel v. Sabine Towing & Transp. Co.*, 669 F.2d 345, 346 (5th Cir.1982), an injured seaman would be left less than whole if a ship operator were free to elect between providing maintenance or furnishing lost wages. Consequently, courts have rejected claims by ship operators that a seaman's maintenance award should be offset by the ship operator's payment of wages for the time in which the seaman is unfit for duty. *See id.; Shaw v. Ohio River Co.*, 526 F.2d 193, 199–200 (3d Cir.1975). Because Alvarez was entitled to both his lost wages and maintenance for the time in which he was unfit for duty, BSL was not entitled to substitute its payment of wages due to Alvarez for its separate duty of furnishing maintenance.

**B. *The District Court's Award of Attorneys' Fees and Trial Expenses***

◼ Recognizing the importance of a seaman's right to be made whole through the recovery of maintenance and cure, the federal courts have fashioned a supplemental remedy for instances in which a ship operator's unjustified refusal to own up to its responsibilities to furnish maintenance and cure forces a seaman to incur the expense of a lawsuit to collect that which is due. When a ship operator fails to make a prompt, good faith investigation of a seaman's claim for maintenance and cure or otherwise takes a "callous" or "recalcitrant" view of its obligations, the seaman may recover legal expenses on top of maintenance and cure. *See Vaughan*, 369 U.S. at 530–31, 82 S.Ct. at 999–1000; *Roberts v. S.S. Argentina*, 359 F.2d 430 (2d Cir.1966) (per curiam).

◼ The district court found that BSL's handling of Alvarez's claim was callous and recalcitrant. Here, too, we find the district court's finding well supported by the record and reject BSL's challenge to the finding as clearly erroneous under Fed.R. Civ.P. 52(a).

BSL would have us believe that its conduct in this matter has been a model of enlightened employment practices. It urges that if we uphold the finding that its response to Alvarez's claim was unreasonable and unjustified, we will set a precedent making it impossible for any ship operator ever to engage in a good faith inquiry of a seaman's claim for maintenance and cure prior to paying. After reviewing BSL's actions in this case, we cannot say that our forecast is so grim.

◼ As the district court found, BSL addressed Alvarez's August 9, 1986, demand for maintenance and cure by passing the matter over to counsel. Counsel responded on August 26, 1986, by stonewalling the claim. Counsel asserted that Alvarez's failure to obtain BSL's consent to his choice of physician relieved BSL of its obligation to furnish maintenance and cure— even though a ship operator has no such right of review over a seaman's choice of physician. *See Caulfield*, 633 F.2d at

---

1. We observe that an earlier decision of this court contained language suggesting that an injured seaman may recover lost wages or maintenance and cure, but not both. *See Evans v. Schneider Transp. Co.*, 250 F.2d 710, 712 (2d Cir.1957) ("Plaintiff cannot recover maintenance and cure in addition to loss of wages, for the same periods." (citation omitted)). As we later noted, however, *Evans* involved a situation in which a plaintiff already had received lost wages as part of a negligence judgment against the ship operator and then attempted to double the recovery by seeking the same lost wages in his maintenance and cure action. *See Bartholomew v. Universe Tankships, Inc.*, 279 F.2d 911, 917–18 (2d Cir.1960); *see also Travis v. Motor Vessel Rapids Cities*, 315 F.2d 805, 812–13 (8th Cir.1963) (making same observation).

1133–35. Additionally, counsel stated that BSL would not pay any medical expenses until Alvarez made himself available for a medical examination in New York City. BSL was well aware that Alvarez had returned to Honduras, and made no effort to locate a Honduran physician who could have performed whatever examination BSL deemed necessary. When BSL was informed in October 1986 that Alvarez would need three months of intensive physical therapy in Honduras, BSL continued to do nothing, and Alvarez, consequently, was unable to receive the prescribed physical therapy.

■ If the slightest reasonable doubt remained as to the initial necessity of the surgery, it should have been dispelled by February 24, 1987, when BSL's own expert, Dr. Kapland, examined Alvarez and refused to conclude that the surgery had been unnecessary. Although BSL may have been entitled to claim that the amounts expended by Alvarez for maintenance and cure were excessive, BSL advances no evidence showing that it offered to satisfy those expenditures it deemed reasonable. Instead, BSL persisted with its hardball tactics and refused to provide Alvarez a single penny for his maintenance and cure until forced to do so.[2]

■ Finally, BSL claims that the district court awarded excessive attorneys' fees and trial expenses to Alvarez. BSL has made no showing to establish that the district court's award does not correspond to the resources reasonably expended in litigating Alvarez's maintenance and cure claims. Similarly, we find no evidence which would render the district court's finding clearly erroneous.

C. *Sanctions Pursuant to Federal Rule of Appellate Procedure 38*

■ This appeal underscores that BSL continues in its objectionable litigation tac-

tics. One might gather from the tone of this opinion our genuine dismay that BSL has persisted in litigating this case. Although a party which loses in the district court has the right to pursue any and all bona fide arguments upon appeal, the right to an appeal does not grant a party a license to clog the appellate docket by advancing meritless arguments for the sole purpose of harassing the prevailing party and subjecting it to undue time and expense.

We have found BSL's arguments entirely without merit. In large part, BSL appeals on the basis of the district court's findings of fact. Yet throughout BSL's 47–page main brief and 23–page reply brief, one is hardpressed to find many instances in which BSL offers specific examples from the record which would contradict the district court's findings. BSL's general strategy has been blithely to claim that the record is replete with error after error and invite opposing counsel and the court to burrow through the record, searching for the needles BSL hints are buried in the haystack, only to find nothing in the record to back up BSL's illusory assertions.

At varying points in its argument, BSL contends that its conduct was far more in line with its legal obligations than the district court otherwise found. As noted above, BSL has objected that it should have been allowed to withhold maintenance for the period between July 19, 1986, and August 9, 1986, during which it paid Alvarez for lost wages. BSL also has suggested that it was entitled to refuse payment of Alvarez's medical expenses because of Alvarez's failure to submit his proposed treatment for BSL's prior approval. BSL cites no cases to demonstrate that such courses of action were permissible. Indeed, this is not surprising, because, as we have dis-

---

**2.** BSL also argues that, at the very least, it was justified in rejecting Alvarez's request for $45 per day in maintenance while in New York City because it could find no precedent explicitly authorizing this sum. A seaman is entitled to recoup reasonable expenditures made for his food and lodging. *See Incandela v. American Dredging Co.*, 659 F.2d 11, 14 (2d Cir.1981).

BSL has made no showing that $45 per day is not a reasonable amount for a seaman's maintenance in New York City. Like the district court, we would consider it entirely reasonable. In fact, when BSL requested that Alvarez come to New York City for a deposition and medical examination, it agreed to compensate him $54 per day for food and lodging.

**318**

cussed, case law points directly in the other way on both points.

The Federal Rules of Appellate Procedure afford us a mechanism to deal with such abusive litigation tactics. Rule 38 provides, "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." Rule 38 sanctions may include the granting of reasonable attorneys' fees to the party forced to defend the frivolous appeal. *See In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 517 (2d Cir.), *cert. denied*, 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985).

The clear lack of merit in BSL's appeal, combined with BSL's consistent intransigence in responding to Alvarez's claim throughout this case, leads us to the inescapable conclusion that this appeal was launched solely for harassment value. Obviously, Alvarez and counsel should not have to bear the brunt of BSL's vexatious tactics and are entitled to recover from BSL their reasonable expenses in connection with defending this appeal. Accordingly, we award Alvarez both his attorneys' fees and costs on appeal. We define costs as those ordinarily recoverable under Federal Rule of Appellate Procedure 39 and Second Circuit Rule § 39. We remand to the district court for calculation of Alvarez's attorneys' fees and costs on appeal. After calculating the award due to Alvarez, the district court will enter an order against BSL in that amount. *See Burroughs v. Wallingford*, 780 F.2d 502, 503 (5th Cir.1986) (per curiam).

Judgment affirmed. Appeal remanded to the district court for further proceedings consistent with this opinion.