10-5181-cv
Messier v. Bouchard Transportation

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————————————

August Term, 2011

(Submitted: December 2, 2011          Decided: July 20, 2012)

Docket No. 10-5181-cv

————————————————

RICHARD MESSIER,

*Plaintiff-Appellant*,

*-v.-*

BOUCHARD TRANSPORTATION,

*Defendant-Appellee*.

————————————————

Before:

HALL, LYNCH, LOHIER, *Circuit Judges.*

————————————————

Plaintiff-Appellant, a seaman, contracted lymphoma and sued his former employer, a tugboat operator, seeking *inter alia* maintenance and cure. Undisputed evidence establishes that the seaman had lymphoma during his maritime service. But it is also undisputed the disease did not present any symptoms at all until *after* his service. After concluding the disease did not "manifest" itself during the seaman's service, the district court granted summary judgment for the tugboat operator.

Because the seaman's illness indisputably occurred *during* his service, he is entitled to maintenance and cure regardless of when he began to show symptoms. We

REVERSE the district court's grant of summary judgment for the tugboat operator and

REMAND the case with instructions to enter partial summary judgment for the seaman.

REVERSED AND REMANDED.

_____

Dennis M. O'Bryan, O'Bryan Baun Karamanian, Birmingham, MI, *for Plaintiff-Appellant*.

John J. Walsh, Freehill Hogan & Mahar LLP, New York, NY, *for Defendant-Appellee*.

_____

HALL, *Circuit Judge*:

Plaintiff-Appellant Richard Messier, a seaman, contracted lymphoma and sued his former employer, Defendant-Appellee Bouchard Transportation Co., Inc. ("Bouchard"), seeking maintenance and cure.[1]  Undisputed evidence establishes that Messier had lymphoma during his maritime service.  But it is also undisputed the disease did not present any symptoms at all until *after* his service.  After concluding Messier's lymphoma did not "manifest" itself during his service, the district court (McMahon, J.) granted summary judgment for Bouchard.

The first presentation of symptoms, however, is not the touchstone for maintenance and cure.  If a seaman's injury or illness occurs during his service, he is entitled to maintenance and cure regardless of when he starts to show symptoms.

---

[1] He also asserted Jones Act and unseaworthiness claims but those claims are not before us on appeal.

2

Exercising jurisdiction under 28 U.S.C. § 1291, we reverse the district court's grant of summary judgment for Bouchard and remand the case with instructions to enter partial summary judgment for Messier.

## I.     Background

This case's facts are not materially in dispute.[2]  Messier, a career tugboat seaman, was hired by Bouchard in March 2004.  In September 2005, he was assigned to work on a Bouchard vessel called the tug Evening Mist.  He served at least two three-week "hitches" between September and October 2005.  Messier claims that on the evening of October 23, 2005, while in service, he fell climbing down a ladder, and suffered back pain.  He sought medical care, and was diagnosed with a "probable back sprain."

Messier's back injury was apparently minor, and the pain associated with it quickly subsided.  But the resulting medical examinations revealed a much more serious problem.  During the course of Messier's examination, his doctor had ordered routine blood tests, which showed an elevated level of creatinine in Messier's blood.  For a week Messier's creatinine levels rose dramatically, and his doctor sent him to the emergency

---

[2] Bouchard argues on appeal, as it did below, that Messier's doctor's testimony about when Messier contracted lymphoma "should not be considered" because the doctor "furnished no basis for the reliability of that opinion."  However, as the district court properly held, Bouchard does not offer any contrary evidence, and merely makes the conclusory statement that the doctor's testimony is not reliable.  For the purpose of summary judgment, therefore, the doctor's testimony that Messier's lymphoma "existed for at least several months prior to my January 13, 2006[,] report, which would include September/October 2005," is unrebutted and defines the facts of the case.  All other facts are undisputed, and our description draws principally from the District Court's November 22, 2010, order granting summary judgment.  *See Pilgrim v. Luther*, 571 F.3d 201, 203 (2d Cir. 2009).

3

room on November 4, 2005, to be treated for renal failure. The symptoms subsided and Messier was released, but doctors performed more tests, trying to discover why his kidneys had failed. In late December 2005, two months after his service on the Evening Mist ended, Messier was diagnosed with B-cell lymphoma. He underwent treatment, and did not return to work until October 2006.

Messier filed this complaint in federal district court in November 2008, asserting claims for negligence under the Jones Act, and for unseaworthiness and maintenance and cure under general maritime law. The parties cross-moved for summary judgment on maintenance and cure after Messier dropped his other claims. Although the district court concluded that, for the purposes of summary judgment, Messier's lymphoma existed while he was employed on the Evening Mist, it held that Messier was not entitled to maintenance and cure as a matter of law because his lymphoma did not "manifest" itself, i.e., did not present symptoms, while Messier was in service of the ship. Accordingly, the district court granted Bouchard's motion for summary judgment and dismissed the case.[3]

Messier timely appeals.

## II.    Discussion

### A.    Standard of Review

---

[3] The district court rejected on factual grounds Messier's alternative theory—that he was entitled to maintenance and cure because the cancer manifested itself while he was otherwise receiving maintenance and cure.

We review an order granting summary judgment de novo, *Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011), applying the same standard as the district court, *see Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Group, Inc.)*, 336 F.3d 94, 99 (2d Cir. 2003). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "examin[e] the evidence in the light most favorable to, and draw[] all inferences in favor of, the non-movant." *Sheppard v. Beerman*, 317 F.3d 351, 354 (2d Cir. 2003).

B.      Maintenance and Cure

"A claim for maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship." *Lewis v. Lewis & Clark Marine, Inc.*, 531 US 438, 441 (2001). The doctrine entitles an injured seaman to three district remedies—maintenance, cure, and wages. *See Rodriguez Alvarez v. Bahama Cruise Line, Inc.*, 898 F.2d 312, 315-16 (2d Cir. 1990). "Maintenance" compensates the injured seaman for food and lodging expenses during his medical treatment. *Id.* at 316. "Cure" refers to the reasonable medical expenses incurred in the treatment of the seaman's condition. *See Reardon v. Cal. Tanker Co.*, 260 F.2d 369, 371-72 (2d Cir. 1958). And lost wages are provided in addition to maintenance, on the rationale that "maintenance compensates the injured seaman for food and lodging, which the seaman otherwise receives free while on the ship." *Rodriguez Alvarez*, 898 F.2d at 316.

5

"The obligation to provide maintenance and cure payments," however, "does not furnish the seaman with a source of lifetime or long-term disability income." Robert Force, Federal Judicial Center, *Admiralty and Maritime Law* 89 (2004). A seaman is entitled to maintenance and cure only "until he reaches maximum medical recovery." *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962). Put another way, "maintenance and cure continues until such time as the incapacity is declared to be permanent." *Vella v. Ford Motor Co.*, 421 U.S. 1, 5 (1975) (quotation marks omitted). "However, where a seaman has reached the point of maximum medical cure and maintenance and cure payments have been discontinued, the seaman may nonetheless reinstitute a demand for maintenance and cure where subsequent new curative medical treatments become available." Force, *supra*, at 90; *see also Farrell v. United States*, 336 U.S. 511, 519 (1949).

Maintenance and cure is an "ancient duty," *Calmar Steamship Corp. v. Taylor*, 303 U.S. 525, 527 (1938), which traces its origin to medieval sea codes, "and is undoubtedly of earlier origin," 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6-28 (5th ed. 2011). *See generally* John B. Shields, *Seamen's Rights to Recover Maintenance and Cure Benefits*, 55 Tul. L. Rev. 1046, 1046 (1981) (describing how the doctrine was codified as early as 1338 in the Black Book of the Admiralty). The duty "arises from the contract of employment" and "does not rest upon negligence or culpability on the part of the owner or master." *Taylor*, 303 U.S. at 527. In that respect,

maintenance and cure has been called "a kind of nonstatutory workmen's compensation." *Weiss v. Cent. R.R. Co. of N.J.*, 235 F.2d 309, 311 (2d Cir. 1956).

The analogy to workers' compensation, however, can be misleading, because maintenance and cure is a far more expansive remedy. First, although it is limited to "the seaman who becomes ill or is injured *while in the service of the ship*," *Vella*, 421 U.S. at 3 (emphasis added), it is not "restricted to those cases where the seaman's employment is the cause of the injury or illness," *Taylor*, 303 U.S. at 527. "[T]he obligation can arise out of a medical condition such as a heart problem, a prior illness that recurs during the seaman's employment, or an injury suffered on shore." Schoenbaum, *supra*, at § 6-28. Second, the doctrine is "so broad" that "negligence or acts short of culpable misconduct on the seaman's part will not relieve the shipowner of the responsibility." *Vella*, 421 U.S. at 4 (alterations and quotation marks omitted). Third, the doctrine may apply even if a seaman is injured or falls ill off-duty—for example, while on shore leave, *see Warren v. United States*, 340 U.S. 523, 530 (1951)—so long as the seamen is "in the service of the ship," which means he is "generally answerable to its call to duty rather than actually in performance of routine tasks or specific orders." *Farrell*, 336 U.S. at 516 (quotation marks omitted). Fourth, a seaman may be entitled to maintenance and cure even for a preexisting medical condition that recurs or becomes aggravated during his service. *See Sammon v. Cent. Gulf S.S. Corp.*, 442 F.2d 1028, 1029 (2d Cir. 1971); *compare Brahms v. Moore-McCormack Lines, Inc.*, 133 F. Supp. 283, 286 (S.D.N.Y. 1955) (denying maintenance and cure when seaman submitted evidence showing his injury preexisted his

7

service and recurred afterward, but did not submit any evidence showing that illness existed during his service).

The policy underlying a broad maintenance and cure doctrine is "the almost paternalistic duty" admiralty law imposes on a shipowner toward the crew. *Garay v. Carnival Cruise Line, Inc.*, 904 F.2d 1527, 1530 (11th Cir. 1990). As Justice Story famously explained:

> Seamen are by the peculiarity of their lives liable to sudden sickness from change of climate, exposure to perils, and exhausting labour [sic]. They are generally poor and friendless, and acquire habits of gross indulgence, carelessness, and improvidence. If some provision be not made for them in sickness at the expense of the ship, they must often in foreign ports suffer the accumulated evils of disease, and poverty, and sometimes perish from the want of suitable nourishment. Their common earnings in many instances are wholly inadequate to provide for the expenses of sickness; and if liable to be so applied, the great motives for good behaviour [sic] might be ordinarily taken away by pledging their future as well as past wages for the redemption of the debt. . . . On the other hand, if these expenses are a charge upon the ship, the interest of the owner will be immediately connected with that of the seamen. The master will watch over their health with vigilance and fidelity. He will take the best methods, as well to prevent diseases, as to ensure a speedy recovery from them. He will never be tempted to abandon the sick to their forlorn fate; but his duty, combining with the interest of his owner, will lead him to succor their distress, and shed a cheering kindness over the anxious hours of suffering and despondency.

*Harden v. Gordon*, 11 F. Cas. 480, 483 (C.C.D. Me. 1823) (No. 6,047). The Supreme Court relied on Justice Story's "classic passage" more than a hundred years later to lay out the three primary justifications for maintenance and cure: (1) "[t]he protection of seamen," (2) "the inducement to masters and owners to protect the safety and health of seamen while in service," and (3) "the maintenance of a merchant marine for the

8

commercial service and maritime defense of the nation by inducing [sea]men to accept employment in an arduous and perilous service." *Taylor*, 303 U.S. at 528.

No matter how the doctrine is formulated, one thing is clear—the duty of maintenance and cure exists for the benefit of seamen. Accordingly, the Supreme Court instructs us to be "liberal in interpreting this duty for the benefit and protection of seamen who are [the admiralty courts'] wards." *Vaughan*, 369 U.S. at 531-32 (quotation marks omitted). A "shipowner's liability for maintenance and cure [is] among the most pervasive of all," and is "not to be defeated by restrictive distinctions nor narrowly confined." *Id.* at 532 (quotation marks omitted). Thus, "[w]hen there are ambiguities or doubts, they are resolved in favor of the seaman." *Id.*; *see also Farrell*, 336 U.S. at 516 ("It has been the merit of the seaman's right to maintenance and cure that it is so inclusive as to be relatively simple, and can be understood and administered without technical considerations. It has few exceptions or conditions to stir contentions, cause delays, and invite litigations.").

### C. "Manifestation" of an Asymptomatic Illness

Keeping the foregoing principles in mind, this case's major question is easy to frame: whether a seaman may obtain maintenance and cure for an injury that occurs during his service of the ship, but does not present symptoms until his service is over. And though this question appears to be a matter of first impression among the federal appeals courts, its answer is straightforward. The only evidence submitted by either party

9

establishes that Messier's illness occurred during his service. He therefore is entitled to maintenance and cure. The district court erred in concluding otherwise.

1. *The "Occurrence Rule"*

The rule of maintenance and cure is simple and broad: a seaman is entitled to maintenance and cure for *any* injury or illness that occurs or becomes aggravated while he is serving the ship. *Vaughan*, 369 U.S. at 531 ("Maintenance and cure is designed to provide a seaman with food and lodging when he *becomes sick or injured* in the ship's service." (emphasis added)); *Rodriguez Alvarez*, 898 F.2d at 314 ("A seaman is entitled to look to his ship operator for maintenance and cure following any injury *incurred* while in the ship operator's employ." (emphasis added)). It does not matter whether he is injured because of his own negligence. *Vella*, 421 F.3d at 4. It does not matter whether the injury or illness was related to the seaman's employment. *Taylor*, 303 U.S. at 527. It does not even matter, absent active concealment, if the illness or injury is merely an aggravation or recurrence of a preexisting condition. *See Sammon*, 442 F.2d at 1029. This well-established rule does not permit an exception for asymptomatic diseases—so long as the illness was present during the seaman's service, he is entitled to maintenance and cure. For the sake of convenience, we will call this rule the "occurrence rule."

Asymptomatic injuries have never been considered by any federal appeals court. The lone district court to have considered the matter applied the occurrence rule. In *Leonard v. United States (In re Petition of the United States)*, 303 F. Supp. 1282 (E.D.N.C. 1969), *aff'd per curiam*, 432 F.2d 1357 (4th Cir. 1970), a seaman suffered

10

minor injuries jumping overboard to escape a shipboard explosion. *Id.* at 1309-11. A few weeks later, "complaining of a cough, nervousness and insomnia," he saw a doctor, and was diagnosed with lung cancer. *Id.* at 1309-10. He died from lung cancer nine weeks after the ship explosion. *Id.* at 1309. All the medical experts involved in the case agreed that the seaman had a malignant cancer in his left lung prior to the shipboard disaster. *Id.* at 1310. Because the seaman "[o]bviously . . . had the malignancy while aboard the [ship]," his estate's claim for maintenance and cure was "[c]learly . . . valid even though the lung cancer may not have manifested itself while in the service of the ship." *Id.* at 1311.

In the present case, the only evidence submitted at summary judgment establishes Messier had lymphoma during his maritime service. And the Supreme Court has instructed us to resolve "ambiguities or doubts . . . in favor of the seaman." *Vaughan*, 369 U.S. at 532. Under the occurrence rule, Messier is therefore entitled to maintenance and cure as a matter of law.

### 2. *The District Court's "Manifestation Rule"*

The district court in this case correctly recognized the general rule—in our nomenclature the occurrence rule—whereby a seaman is entitled to maintenance and cure for any injury or illness that "occur[s], become[s] aggravated, or manifest[s] itself while the seaman is in the service of the ship." *Messier v. Bouchard Transp.*, 756 F. Supp. 2d 475, 481 (S.D.N.Y. 2010) (citing *Aguilar v. Standard Oil Co. of N.J.*, 318 U.S. 724, 730 (1943) (quotation marks omitted)). But the court then proceeded to create an exception

11

to that general rule, holding that an injury must not only occur, but also "manifest," i.e.,

show symptoms, during a seaman's service.[4] *Id.* at 489. Neither case law nor policy

considerations support this formulation.

a. Case Law

The "manifestation" of symptoms has never been the touchstone for a seaman's

entitlement to maintenance and cure. The actual rule is much simpler—maintenance and

cure covers any injury or illness that *occurs* while in the service of the ship. All that

matters is when the injury occurred, not when it started to present symptoms.

In reaching a different conclusion, the district court was misled by imprecise

language from this court. Several years ago, we stated that "[a] seaman whose illness or

injury *manifests* after conclusion of his or her employment with the shipowner is

generally not entitled to recover for maintenance and cure absent convincing proof of

causal connection between the injury or illness and the seaman's service." *Wills v.*

*Amerada Hess Corp.*, 379 F.3d 32, 52 (2d Cir. 2004) (quotation marks omitted and

emphasis added).

Our language notwithstanding, it is evident for two reasons that *Wills* did not

create a new manifestation requirement. The district court appreciated the first one,

acknowledging that the relevant passage from *Wills* is dicta. *See Messier*, 756 F. Supp.

_____

[4] In so holding, the district court effectively concluded maintenance and cure is available only for an injury that occurs or becomes aggravated *and* manifests itself while the seaman is in the service of the ship, implicitly contradicting its earlier statement that an injury or illness must occur *or* manifest itself during service, *see Messier*, 756 F. Supp. 2d at 481.

12

2d at 482. In *Wills*, a seaman died of cancer, which was not diagnosed until his maritime service had ended. 379 F.3d at 37-38. The only evidence the seaman's estate presented about the timing of the onset of his cancer was a fellow seaman's testimony that the decedent had, during his employment, "complained to me on several occasions of symptoms he was experiencing." *Id.* at 53 (quotation marks omitted). Repeating the familiar rule that "the no-fault obligation of shipowners to provide maintenance and cure extends only to a seaman who becomes ill or injured while 'in the service of the ship,'" the *Wills* panel held simply that this sole piece of evidence was not enough—the fellow seaman "lack[ed] the medical training or expertise necessary to conclude reliably that decedent's squamous cell carcinoma presented itself while decedent was employed by defendants or was caused by exposure to toxic emissions while in defendants' employ." *Id* (quoting *Aguilar*, 318 U.S. at 731-32). Thus, given the clear holding pursuant to which the *Wills* claim was dismissed for lack of evidence the illness occurred or presented during the employment period at all, any additional discussion in *Wills* regarding the timing of an injury's manifestation is dicta.[5]

Second, it is clear from the *Wills* opinion itself that its discussion of maintenance and cure was describing the traditional occurrence rule and not, as the district court believed, creating a new manifestation rule. Because *Wills* turned on the fact that the seaman's estate failed to provide evidence that his cancer began during his service or was

---

[5] Perhaps recognizing that fact, no court (other than the district court in this case) has ever relied on *Wills* to create a "manifestation" exception to the general occurrence rule.

caused by his service, *see* 379 F.3d at 52-53, the case is best read as a straightforward

application of the traditional occurrence rule in which the word "manifests" was used as a

synonym for the word "occurs." Several factors lead us to this conclusion.

First, in the paragraph after its discussion of "manifestation," the *Wills* opinion

describes the test for maintenance and cure in a different way, holding that there was no

evidence the seaman's cancer "*presented* itself" during his service. 379 F.3d at 53

(emphasis added). The *Wills* panel apparently did not consider manifestation a new,

different phase of a preexisting disease, but rather the same event that has always

triggered a shipowner's liability for maintenance and cure—the occurrence of the disease.

That is how one of the few district courts to interpret *Wills* has read the case. *See Lovos*

*v. Ocean Fresh Sea Clam, Ltd.*, No. 08-cv-1167, 2010 WL 5665035, at *3 (E.D.N.Y.

Dec. 21, 2010) (in a case with conflicting testimony regarding whether the seaman had

been injured during his service by a falling hose, or after his service through some other

cause, citing *Wills* to illustrate the difference between a seaman who "becomes ill or

injured while in the service of the ship" with one, as in *Wills*, "whose illness manifests

after conclusion of his or her employment" (emphasis and quotation marks omitted)).

Additionally supporting the idea that *Wills* did not announce a new rule are the

three cases *Wills* relied on when discussing manifestation. 379 F.3d at 52-53 (citing

*Brahms*, 133 F. Supp. at 286—which in turn cites *Miller v. Lykes Bros.-Ripley S.S. Co.*,

98 F.2d 185, 186 (5th Cir. 1938)—and *Capurro v. The All Am.*, 106 F. Supp. 693, 694

(E.D.N.Y. 1952)). None of the cases *Wills* cites involved an injury that occurred during a

14

seaman's service and became symptomatic later. In *Brahms*, a seaman was denied

maintenance and cure for a "psychic trauma" that pre-existed his service, and reoccurred

after his service, because there was "no proof" the trauma existed *during* his service. 133

F. Supp. at 286.[6] In *Miller*, the Fifth Circuit held that a seaman's "claim for maintenance

has no basis in the absence of a showing that the [complained-of illness] *began* while [the

seaman] was in the service of the [ship]." 98 F.2d at 186 (emphasis added). And in

*Capurro*, the district court denied maintenance and cure for an injury which "existed for

many years prior to [the seaman's] employment aboard the vessel, and which did not

arise out of, or become aggravated by his service aboard the vessel." 106 F. Supp. at 694.

In sum, *Brahms*, *Miller*, and *Capurro* all dealt with the classic situation in which a

seaman cannot prove his injury occurred or was aggravated during his service. Those

cases did not create a new rule. By extension, in citing those cases, *Wills* too was

describing the traditional rule. If *Wills* had wanted to create a new supplementary

manifestation requirement, it would not have relied on *Brahms*, *Miller*, and *Capurro*.[7]

---

[6] Importantly, the district court in *Brahms* contrasted the matter before it with cases in which "the pre-existing disease manifested itself and required treatment while plaintiff was still serving on defendant's vessel." 133 F. Supp. at 285.

[7] The district court similarly misconstrued *Taylor* as "plainly articulat[ing]" that a disease must "manifest—i.e., must exhibit itself, or show symptoms—during the period of service to the ship." *See Messier*, 756 F. Supp. 2d at 489 (quotation marks omitted). That is a much too broad reading of *Taylor*, which did not impart a special meaning to "manifestation." *See* 303 U.S. at 530. As in *Wills*, *see* 379 F.3d at 53, *Taylor* was clearly using a disease's "manifestation" as a synonym for its first occurrence. 303 U.S. at 527 (discussing shipowners' duty to provide maintenance and cure "for seamen injured or falling ill while in service").

15

b. Purpose of Maintenance and Cure

The district court also thought that limiting maintenance and cure to injuries and illnesses showing symptoms during a seaman's service "has considerable force as a policy matter." *Messier*, 756 F. Supp. 2d at 486. The district court identified three problems as a matter of policy that would be occasioned by the occurrence rule that plaintiff would have us apply here. First, it suggested a historical-technological problem—maintenance and cure predates modern medicine, and "it strains the bounds of reason to conclude that a seaman who became ill during or after a voyage in 1492 could have recovered maintenance and cure from a prior shipowner on the ground that the disease was lurking in his bloodstream in 1489." *Id.* Second, the court concluded (without analysis) that the occurrence rule would "not further any of the policies behind maintenance and cure" the Supreme Court identified in *Taylor*. *Messier*, 756 F. Supp. 2d at 487; *see Taylor,* 303 U.S. at 528. Third, the district court worried about the practical effect of the occurrence rule—that it would "inevitably lead to exceedingly complicated litigation over when a seaman first contracted a particular slow-growing disease." *Messier*, 756 F. Supp. 2d at 487. According to the district court, such a result would run contrary to the Supreme Court's description of maintenance and cure as "so inclusive as to be relatively simple, and [able to] be understood and administered without technical considerations." *See Farrell*, 336 U.S. at 516. We appreciate the district court's caution, but we respectfully disagree.

16

First, there is no reason to limit maintenance and cure to the medical science of centuries ago. Even if "[t]he concept that a slow-growing, symptomless disease might lurk inside a human body for years or decades was undreamed of" in the Fifteenth Century, *Messier*, 756 F. Supp. 2d at 486, it is a well-known reality today. And rather than fixing the doctrine in medicine of ages past, admiralty courts have viewed maintenance and cure as a flexible doctrine, and have allowed it to evolve with new technology. *See, e.g.*, *Haskell v. Socony Mobil Oil Co.*, 237 F.2d 707, 709 (1st Cir. 1956) (a seaman has right to cure "until medical science can do no more"); Force, *supra*, at 90 (a seaman who has reached the point of maximum medical cure "may nonetheless reinstitute a demand for maintenance and cure where subsequent new curative medical treatments become available"); *see also Williamson v. W.-Pac. Dredging Corp.*, 304 F. Supp. 509, 515 (D. Or. 1969) (admitting that granting maintenance and cure on the facts before the court "would be going somewhat outside the perimeter of established case law," but recognizing "the flexibility of the ever[-]expanding field of admiralty to meet the standards and requirements of an ever advancing age of civilization").

Second, the policies underlying maintenance and cure identified in *Taylor* support, rather than undercut, the occurrence rule. Clearly, a more liberal maintenance and cure rule gives more protection to seamen. *See* 303 U.S. at 528. The district court's manifestation rule, on the other hand, would shift some of the burden of securing maintenance and cure to the seaman, who must be attuned to any and all physical symptoms, no matter how minor, and report them before the end of his service or else

17

risk forfeiting his right to maintenance and cure. By the same token, the manifestation rule would discourage, rather than induce "masters and owners to protect the safety and health of seamen while in service." *See id.* All an owner would have to do to avoid liability is make sure a seaman was discharged before he presented symptoms. One would anticipate, for example, that a manifestation rule would reduce in-service employer-provided medical examinations, and might even induce owners to take active steps to prevent seamen from seeking medical attention to avoid creating a paper trail of symptoms. The third policy rationale recognized in *Taylor* is neutral—it is hard to imagine a seaman's decision to "accept employment in an arduous and perilous service" turning on whether an asymptomatic injury or illness occurring during his service will be compensated. *See id.* Taken together, however, the *Taylor* policy considerations strongly suggest that applying the occurrence rule, rather than the manifestation rule, is the better way to further the policies behind maintenance and cure.

By contrast, there is merit to the district court's third objection to the occurrence rule—that it might add complexity to many maintenance and cure actions by calling into question when, exactly, a disease first began. That is true without a doubt. But the Supreme Court has told us that a shipowner's duty to provide maintenance and cure is "among the most pervasive of all," and that we should not defeat it by "restrictive distinctions." *Vaughan*, 369 U.S. at 532 (quotation marks omitted). Our sense that the rule might create "complexity" is not a reason to limit the doctrine of maintenance and cure, which the district court acknowledged is "far, far more liberal than any worker's

18

compensation program." *Messier*, 756 F. Supp. at 489. To support its view that "complexity" is something we might properly consider, the district court relied on the Supreme Court's statement in *Farrell* that "[i]t has been the merit of the seaman's right to maintenance and cure that it is so inclusive as to be relatively simple, and can be understood and administered without technical considerations." *Messier*, 756 F. Supp. at 487 (citing *Farrell*, 336 U.S. at 516). *Farrell* goes on to emphasize that maintenance and cure "has few exceptions or conditions to stir contentions, cause delays, and invite litigations," and that a master "must maintain and care for even the erring and careless seaman, much as a parent would a child." *Farrell*, 336 U.S. at 516. The most faithful application of *Farrell*, therefore, is to adopt a broad understanding of maintenance and cure, not to create "exceptions or conditions," see *id.*, merely because of our fear of complicated litigation.

At bottom, the district court's discomfort with the occurrence rule is, perhaps, understandable. After all, a rule imposing liability on an employer for an injury that was known neither to the employer nor the employee during the period of employment seems odd—at least outside the admiralty context. But admiralty is different, and maintenance and cure is a unique remedy. It is "broad." *Vella*, 421 U.S. at 4. We are to be "liberal in interpreting" it "for the benefit and protection of seamen." *Vaughan*, 369 U.S. at 531 (quotation marks omitted). We are instructed to resolve "ambiguities or doubts . . . in favor of the seaman." *Id.* at 532. The general rule is that maintenance and cure is available for *any* injury or illness that occurs during a seaman's service. The only way to

19

establish a manifestation exception is to construe the remedy narrowly rather than broadly, which the Supreme Court has explicitly told us not to do.

**III.     Conclusion**

We reiterate the longstanding rule of maintenance and cure:  a seaman is entitled to maintenance and cure for any injury or illness that occurs or becomes aggravated while he is serving the ship.  Consequently, the district court's grant of summary judgment for Bouchard is **REVERSED** and the case is **REMANDED** with instructions to enter partial summary judgment for Messier as to his entitlement to maintenance and cure.  The case may proceed to trial on the amount of maintenance and cure due.  *See Incandela v. Am. Dredging Co.*, 659 F.2d 11, 13-14 (2d Cir. 1981).