# United States Court of Appeals
## For the First Circuit

No. 13-2109

SANTOS RAMIREZ,

Plaintiff, Appellant,

v.

CAROLINA DREAM, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Howard, Stahl and Lipez,
Circuit Judges.

Matthew Viveiros, with whom Hunt & Viveiros, LLC was on brief,
for appellant.
Joseph A. Regan, with whom Sean P. Scanlon and Regan & Kiely
LLP were on brief, for appellee.

July 28, 2014

**LIPEZ, Circuit Judge**.  Appellant Santos Ramirez, a seaman, became ill while working aboard a fishing vessel and was immediately hospitalized when he returned to shore.  Shortly thereafter, he was diagnosed with aplastic anemia, a serious blood condition that prevented him from returning to work as a seaman. He subsequently brought this personal injury action against his employer, seeking a remedy under the Jones Act, 46 U.S.C. § 30104, and general maritime law.  The district court granted summary judgment for the defendant, Carolina Dream, Inc., on each of appellant's alleged causes of action.  On appeal, Ramirez challenges only dismissal of his maritime claim for maintenance and cure, arguing that he is entitled to that remedy until he reaches "maximum medical recovery." Vaughan v. Atkinson, 369 U.S. 527, 531 (1962).  Because we agree that the record would permit a factfinder to find that appellant is entitled to maintenance and cure, we vacate the district court's ruling and remand for further proceedings.

## I.

### A. Factual Background

In recounting the facts, which we present in the light most favorable to appellant Ramirez, see, e.g., Adamson v. Walgreens Co., 750 F.3d 73, 76 (1st Cir. 2014), we borrow liberally from the district court's clear and succinct recitation.

Ramirez had been a crew member on the commercial fishing boat F/V DEFIANT for about eight years when, in December 2008, rough seas during a scallop fishing trip off the New Jersey coast bounced the vessel and caused him to strike his jaw against his bunk. He sustained a laceration inside his mouth, felt dizzy the next day, and began to feel weak and sick to his stomach about three days after the incident. Although appellant asked to be brought ashore, the captain refused and instructed him to perform his duties until the end of the trip.

Appellant's condition worsened before the vessel returned to its home port in Seaford, Virginia, several days later, and his wife took him directly from the dock to a hospital emergency room for treatment. He remained hospitalized for about a month, was discharged in mid-January 2009, but then was readmitted to a different hospital a week later because of continuing symptoms.[1] He was then diagnosed with aplastic anemia, "[a] rare and serious condition" that occurs when the body stops producing sufficient new

_____

[1] The district court noted appellant's assertion that he was admitted to the first hospital "due to a serious infection," although none of the medical reports submitted in this case explicitly identify his problem as an infection. Appellant's records from the first hospital, the Sentara Careplex Hospital in Hampton, Virginia, were not introduced in the district court, although two documents reporting his treatment at that hospital are included in his appendix on appeal. Reports from doctors at the second facility, the Medical Center of Virginia Commonwealth University in Richmond, focused on his blood disorder. In reaching our decision, we have not relied on the records submitted for the first time on appeal.

-3-

blood cells.  See Mayo Clinic Staff, "Aplastic Anemia, Definition," http://www.mayoclinic.org/diseases-conditions/aplastic-anemia/basics/definition/con-20019296 (last visited July 9, 2014).

One of appellant's treating doctors reported that the exact cause of appellant's disease would likely remain unknown -- "as is the case in many occurrences of aplastic anemia" -- but the doctor noted his history of hepatitis C, a typical "culprit of aplastic anemia."  Before the trip during which he became ill, appellant had experienced no symptoms and "was doing [his] work well."  Ramirez states in his brief that he continues to undergo treatment for aplastic anemia and remains unable to work.

Ramirez filed this action in August 2011 alleging negligence under the Jones Act, 46 U.S.C. § 30104, and maritime claims of unseaworthiness and maintenance and cure.  He asserts that his injury "and the delay in receiving the proper medical treatment" caused "a serious infection that lead to [a]plastic [a]nemia."  In opposing summary judgment, he averred that a factfinder could reasonably infer "manifestation of [his] aplastic anemia during his service to the FV DEFIANT."  As noted above, appellant on appeal has challenged only the summary judgment for Carolina Dream on his cause of action for maintenance and cure.  We thus limit our analysis to that claim.

## B. The Doctrine of Maintenance and Cure

The owner of a vessel has a duty to pay maintenance and cure to a seaman "who [is] injured or fall[s] ill while 'in service of the ship.'" Whitman v. Miles, 387 F.3d 68, 72 (1st Cir. 2004) (quoting LeBlanc v. B.G.T. Corp., 992 F.2d 394, 396 (1st Cir. 1993)); see also Atl. Sounding Co. v. Townsend, 557 U.S. 404, 413 (2009); Vaughan, 369 U.S. at 531.[2]  "Maintenance" refers to the cost of food and lodging during the period of illness or recovery from injury, and "cure" covers the reasonable medical expenses incurred for the seaman's treatment.  Atl. Sounding, 557 U.S. at 413; Whitman, 387 F.3d at 71.

The remedy of maintenance and cure is deliberately expansive, see Vella v. Ford Motor Co., 421 U.S. 1, 4 (1975) (noting the "breadth and inclusiveness of the shipowner's duty"), and it is not "restricted to those cases where the seaman's employment is the cause of the injury or illness," Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 527 (1938) ["Taylor"].  "[T]he obligation can arise out of a medical condition such as a heart

---

[2] The requirement that a seaman be "serving the ship" at the time of his illness or injury, Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 441 (2001), means that he must be "generally answerable to its call to duty rather than actually in performance of routine tasks or specific orders."  Farrell v. United States, 336 U.S. 511, 516 (1949).  Hence, a seaman who is injured or taken ill while off the ship may nonetheless be eligible for maintenance and cure.  Cf. Haskell v. Socony Mobil Oil Co., 237 F.2d 707, 709-10 (1st Cir. 1956) (distinguishing between brief shore leaves and "protracted vacations" in holding that maintenance and cure is inapplicable to the latter).

problem, a prior illness that recurs during the seaman's employment, or an injury suffered on shore." 1 Thomas J. Schoenbaum, Admiralty & Maritime Law § 6-29, at 380 (4th ed. 2001); see also Haskell v. Socony Mobil Oil Co., 237 F.2d 707, 709 (1st Cir. 1956) ("[I]t arises when [the seaman] is taken ill from whatever cause during a voyage.").

The doctrine is "so broad" that the seaman's "negligence or acts short of culpable misconduct . . . will not relieve the shipowner of the responsibility." Vella, 421 U.S. at 4 (alterations omitted) (internal quotation marks omitted); see also Messier v. Bouchard Transp., 688 F.3d 78, 82 (2d Cir. 2012) (noting that maintenance and cure "is a far more expansive remedy" than workers' compensation); DiBenedetto v. Williams, 880 F. Supp. 80, 86 (D.R.I. 1995) ("[M]aintenance and cure may still be awarded plaintiff notwithstanding a pre-existing condition as long as that condition is not deliberately concealed and is not disabling at the time the seaman signs on for the voyage."). The wide scope of the duty springs from the status of seamen as "emphatically the wards of the admiralty," Harden v. Gordon, 11 F. Cas. 480, 485 (C.C.D. Me. 1823) (No. 6,047) (Story, J.), and advances multiple purposes, among them to protect seamen "from the hazards of illness and abandonment while ill in foreign ports" and to induce maritime employers to guard against safety and health risks. Taylor, 303 U.S. at 528 (citing Harden, 11 F. Cas. at 483).

> The shipowner's ancient duty to provide maintenance and cure for the seaman who becomes ill or is injured while in the service of the ship derives from the "unique hazards (which) attend the work of seamen," and fosters the "combined object of encouraging marine commerce and assuring the well-being of seamen." . . . [The shipowner's duty] "has few exceptions or conditions to stir contentions, cause delays, and invite litigations."

Vella, 421 U.S. at 3-4 (quoting Aquilar v. Standard Oil Co., 318 U.S. 724, 727 (1943); Farrell v. United States, 336 U.S. 511, 516 (1949)).

The duty of maintenance and cure applies until the seaman has fully recovered or is "so far cured as possible," Farrell, 336 U.S. at 518 -- the latter alternative taking into account that the seaman's condition might stabilize short of full health. The obligation to pay maintenance and cure is thus described as extending until the seaman "reaches maximum medical recovery." Vaughan, 369 U.S. at 531; see also, e.g., Haskell, 237 F.2d at 709 (explaining that "cure" is "cure in the sense of care until medical science can do no more"); Robert Force, Federal Judicial Center, Admiralty & Maritime Law 94 (2d ed. 2013) (defining the cutoff point as "when the condition is cured or declared to be incurable or of a permanent character").

With these legal principles in mind, we now examine the district court's conclusion that appellant did not adduce sufficient evidence to support a claim for maintenance and cure.

Summary judgment is appropriate only if the record shows no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Hicks v. Johnson, No. 13-1741, 2014 WL 2793806, at *2 (1st Cir. June 20, 2014). Our review of the district court's grant of summary judgment is de novo. Hicks, 2014 WL 2793806, at *2.

Appellant asserts that he is entitled to maintenance and cure until he has reached maximum recovery from aplastic anemia, which he contends has not yet occurred. The district court rejected his entitlement to any maintenance and cure on the ground that appellant failed to produce evidence that the disease arose during his service on the F/V DEFIANT -- "[o]ther than asserting that he was in 'normal health' prior to the fishing voyage and hospitalized upon returning to port." The court's rationale reflects a too-narrow view of both the facts and the vessel owner's responsibility.

As detailed above, appellant began feeling weak and dizzy shortly after he sustained an injury onboard the F/V DEFIANT, and he required more than a month's hospitalization immediately after disembarking. A doctor's report stated that he was admitted to a second hospital "due to continued symptoms" a week after he was initially discharged, at which time he was diagnosed with aplastic anemia. Hence, the record shows that appellant became ill during

the December 2008 fishing voyage and remained ill continuously through the time he was determined to have the blood condition. Before that voyage, appellant had been working regularly and without symptoms, notwithstanding a history of hepatitis C.

As appellant emphasizes, the facts here resemble those considered by the Supreme Court in Taylor. In that case, a seaman who obtained medical treatment after stubbing his toe in the ship's boiler room was diagnosed with Buerger's disease, an incurable illness that affects the arteries and veins. 303 U.S. at 526. The Court took for granted that the seaman was entitled to maintenance and cure even though the disease was found to be unrelated to the foot injury. See id. at 528-29. The Court focused, instead, on the duration of the duty. It noted widespread recognition that a seaman who is hurt or becomes ill while serving the ship may receive maintenance and cure "for a reasonable time after the voyage," but it acknowledged that most cases so holding involved a work-related disability. Id.

The Court nonetheless held that the right to maintenance and cure "may outlast the voyage" even when "the efficient cause of the injury or illness was [not] some proven act of the seaman in the service of the ship." Id. at 529. Among its rationales, the Court invoked "the liberality" that admiralty courts give to rules "devised for the benefit and protection of seamen who are its wards," and it noted the undesirable consequences of a contrary

conclusion: "The practical inconvenience and attendant danger to seamen in the application of a rule which would encourage the attempt by master or owner to determine in advance of any maintenance and cure, whether the illness was caused by the employment, are manifest."  Id. at 529-30.

The Supreme Court thus confirmed that maintenance and cure is available for a disabling illness whether or not that illness, though discovered during treatment for an onboard injury, resulted from the injury.  Moreover, as noted above, it does not matter if an incapacitating illness preexisted the seaman's maritime employment, so long as the condition was not deliberately concealed or disabling when the seaman joined the ship's service. See Messier, 688 F.3d at 84; Schoenbaum, supra, at 380.  The inquiry is not one of causation, but of timing: did the illness for which the seaman seeks maintenance and cure begin or become aggravated while he was "serving the ship"?  Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 441 (2001).[3]  Here, then, the question for purposes of summary judgment is whether a factfinder could

---

[3] The Court in Taylor went on to consider the proper duration for the maintenance-and-cure duty in such instances and settled on the now well established principle of maximum medical recovery. See 303 U.S. at 530 ("We can find no basis for saying that, if the disease proves to be incurable, the duty extends beyond a fair time after the voyage in which to effect such improvement in the seaman's condition as reasonably may be expected to result from nursing, care, and medical treatment.").

-10-

conclude that Ramirez suffered from aplastic anemia while still in service to the FV/DEFIANT.

The facts outlined above readily permit such an inference. Ramirez presented evidence that he boarded the ship feeling well and able to work, but left very ill. His medical history includes a known trigger for aplastic anemia. Given his deteriorating health while in the ship's service, his history of hepatitis C, and the short interval between the onset of illness and the diagnosis, a factfinder reasonably could conclude that the dizziness and weakness that appellant experienced on the vessel were the first noticeable and debilitating symptoms of the aplastic anemia. Although the record does not contain medical evidence substantiating appellant's contention that the delay in treatment for his mouth laceration caused "a serious infection" that in turn triggered the aplastic anemia, he is not obliged to prove a cause-and-effect medical basis for the disease. See Taylor, 303 U.S. at 527. Rather, as we have explained, the duty to pay maintenance and cure "arises when [the seaman] is taken ill from whatever cause during a voyage." Haskell, 237 F.2d at 709.

Moreover, in keeping with the breadth of the duty to provide maintenance and cure, the Supreme Court has stated that, in evaluating the shipowner's liability, "ambiguities or doubts . . . are resolved in favor of the seaman." Vaughan, 369 U.S. at 532. At a minimum, a factfinder could conclude on the record before us

-11-

that aplastic anemia was the most likely reason for appellant's deteriorating condition while on the ship, with the disease manifesting as a result of the injury to appellant's jaw or happening to coincide with the injury.

Our decision in <u>Whitman</u> v. <u>Miles</u>, cited by the district court, is not to the contrary. The plaintiff in that case was diagnosed with multiple sclerosis ("MS") after experiencing various physical symptoms (including fatigue, numbness, and incontinence) while working as a cook on a ship. The vessel owner conceded his general duty to provide maintenance and cure, but the parties disputed the duration of the duty and its application to the seaman's specific treatment for depression. <u>See</u> 387 F.3d at 71-74.

We declined to determine whether the depression was a symptom of MS or a separate ailment because, regardless, the seaman would not be entitled to maintenance and cure based on that disorder. <u>Id.</u> at 74. We explained that, if depression were viewed as a distinct ailment, it did not provide a basis for maintenance and cure because the seaman had "failed to produce any evidence that she began to suffer from depression while in the service of the ship." <u>Id.</u> Alternatively, if the depression were treated as a symptom of MS, she would have no claim for additional compensation because the employer already had paid maintenance and cure up to the point of maximum medical recovery. <u>Id.</u>; <u>see</u> <u>also</u> <u>id.</u> at 72 ("The testimony of the doctors for both parties leaves no

genuine issue of material fact that [the plaintiff's] treatment . . . would not reverse her symptoms or improve her condition beyond the point of maximum medical recovery.").

Thus, in Whitman, the maintenance and cure claim that we rejected for evidentiary insufficiency involved either a second, possibly separate medical condition or an attempt to extend benefits beyond the previously identified cutoff point for the remedy.  Here, by contrast, the recognized triggers for aplastic anemia, together with the evidence of physical symptoms experienced by appellant onboard the vessel, provide sufficient support for a finding that his aplastic anemia arose or became aggravated during his service on the ship and, hence, triggered the duty of maintenance and cure.

The impact of our decision, however, may be modest.  At oral argument, appellant's counsel reported that appellee Carolina Dream paid maintenance and cure to his client through the date of the district court's summary judgment ruling in August 2013.  As we have explained, appellant is entitled to maintenance and cure only while he is "moving toward recovery," In re RJF Int'l Corp. for Exoneration from or Limitation of Liab., 354 F.3d 104, 106 (1st Cir. 2004), up to the point of "maximum medical recovery," Vaughan, 369 U.S. at 531.  Although Ramirez asserts that his condition has not yet stabilized, the record on that issue is undeveloped and our decision here does not foreclose summary judgment on the ground

that the employer has satisfied its obligation.  We note, however, that even after achieving maximum medical cure, a seaman may "reinstitute a demand for maintenance and cure where subsequent new curative medical treatments become available."  Force, supra, at 94; see also Farrell, 336 U.S. at 519 (noting that the seaman may be able to recover, "in a new proceeding," the costs of "future treatment of a curative nature" and "for maintenance while receiving it"); Messier, 688 F.3d at 82 (quoting Force and citing Farrell).

Accordingly, we remand this case to the district court for further proceedings consistent with this opinion.

So ordered.